**UNITED STATES BANKRUPTCY COURT**
**NORTHERN DISTRICT OF ILLINOIS**
**EASTERN DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Case No. 23 B 6782 |
| IYS VENTURES, LLC, ) | |
| ) | |
| Debtor. ) | Chapter 11 |
| ) | |
| _____ ) | |
| ) | |
| IYS VENTURES, LLC, ) | |
| ) | |
| Plaintiff, ) | |
| ) | Adv. No. 23 A 352 |
| v. ) | |
| ) | |
| CROSSAMERICA PARTNERS LP, LEHIGH ) | |
| GAS WHOLESALE LLC, LGP REALTY ) | |
| HOLDINGS LP, ERICKSON OIL ) | |
| PRODUCTS, INC., CAP OPERATIONS, INC. ) | Judge David D. Cleary |
| and LEHIGH GAS WHOLESALE ) | |
| SERVICES, INC., ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM OPINION**

IYS Ventures, LLC ("IYS" or "Plaintiff") filed a four-count complaint ("Complaint")

against CrossAmerica Partners LP, Lehigh Gas Wholesale LLC, LGP Realty Holdings LP,

Erickson Oil Products, Inc.,[1] CAP Operations, Inc. and Lehigh Gas Wholesale Services, Inc.

(collectively, "CAP" or "Defendants").  In the Complaint, Plaintiff seeks declaratory and

injunctive relief, as well as monetary damages, attorney's fees and other statutory remedies.

Defendants filed a motion to dismiss the Complaint ("Motion to Dismiss") and the court

entered a briefing schedule.  Plaintiff filed a response ("Response") and Defendants filed a reply

("Reply").  Following briefing, the court heard oral argument from the parties.  Having reviewed

---

[1] Erickson has also been spelled "Erikson" by both Plaintiff and Defendants.

the Complaint, the papers filed and the arguments of the parties, the court will enter an order

granting the Motion to Dismiss as described below, with leave to amend.

## I.     JURISDICTION

The court has subject matter jurisdiction under 28 U.S.C. § 1334(b) and the district

court's Internal Operating Procedure 15(a).  This is a core proceeding under 28 U.S.C. §

157(b)(2)(A) and (O).  Venue is proper under 28 U.S.C. § 1409(a).

## II.     BACKGROUND

In resolving a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the court considers well-

pleaded facts and the reasonable inferences drawn from them in the light most favorable to the

plaintiff.  *See Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 763 (7th Cir. 2010).  Every

allegation that is well-pleaded by a plaintiff is taken as true in ruling on the motion.  *See Berger

v. Nat'l Collegiate Athletic Ass'n*, 843 F.3d 285, 289-90 (7th Cir. 2016).  The court is "not bound

to accept as true a legal conclusion couched as a factual allegation."  *Papasan v. Allain*, 478 U.S.

265, 286 (1986).

To defeat a motion to dismiss, the plaintiff must describe the claim in enough detail to

give notice to the defendant.  *See Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  In

addition, the claim must be "plausible on its face."  *Id.* at 570.  "A claim has facial plausibility

when the plaintiff pleads factual content that allows the court to draw the reasonable inference

that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 556 U.S. 662, 678

(2009).  The pleading need only offer "a short and plain statement of the claim showing that the

pleader is entitled to relief[.]"  Fed. R. Civ. P. 8(a)(2).

Plaintiff's complaint contains the following well-pleaded allegations:

Plaintiff is an Illinois limited liability company with places of business in multiple states. (Complaint, ¶ 1.)  On May 23, 2023 ("Petition Date"), Plaintiff filed a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  (*Id.*, Jurisdiction ¶ 1.)[2]

Plaintiff, as debtor-in-possession, has continued in possession of its property and no trustee has been appointed in its bankruptcy case.  (*Id.*, Jurisdiction ¶ 2.)

Plaintiff entered into a franchise relationship with Defendants' predecessor under different ownership and management.  That predecessor was averse to the use of company-operated service stations and supported the use of dealer-lessee operation of its stations.  (*Id.*, ¶¶ 5-6.)

In late 2019, Defendants acquired the predecessor's business.  Almost immediately, the new management started to reverse course to favor the use of company-operated stations.  (*Id.*, ¶¶ 7-8.)

Prior to 2021, the Plaintiff operated each service station location under an individualized and separate franchise agreement with CAP's predecessor.  (*Id.*, ¶ 16.)  The parties had separate leases and agreements for both the stations and the fuel supply provisions with variants for individual sites or for multiple sites within the same geographic area.  (*Id.*, ¶ 9.)

In early 2021, the Defendants presented the Plaintiff with "Package #00005" and "Package #00006" (the "PMPA Franchise Agreements").  Within each package were three documents: (1) Fuel Supply Agreement; (2) Unitary Lease Agreement; and (3) Proprietary Marks Agreement (collectively with the Security and Cross Default Agreement below, the "CAP Agreements").  (*Id.*, ¶ 17 and Exs. 1 and 2.)  These are "unitary" leases and agreements. (*Id.*, ¶ 10.)

---

[2] The Complaint has two paragraphs each numbered 1, 2 and 5.  The first set is in the Jurisdiction section and has been so indicated in the citation.

3

Sometime later, Defendants presented Plaintiff with a Security and Cross Default Agreement with an effective date of April 1, 2021.  (*Id.*, ¶ 18 and Ex. 3.)

Defendants insisted that the PMPA Franchise Agreements as written were presented to the Plaintiff on a "take it or leave it" basis as to the terms and provisions of the agreements and the "unitary" nature of consolidating all stations into two groups.  (*Id.*, ¶ 11.)

The PMPA Franchise Agreements constitute a franchise relationship between the Defendants and Plaintiff through which Plaintiff operated approximately 49 gasoline stations, including approximately 40 under a leasehold agreement with one or more of the CAP-affiliated entities.[3]  (*Id.*, ¶ 13.)

Of the 49 stations, 35 operate under a trademark owned or controlled by refiners, namely Marathon, Mobil, BP or Amoco.  Plaintiff operates some stations without a refiner brand.  (*Id.*, ¶¶ 14-15.)

The Distributor under the Fuel Supply Agreement is Lehigh Gas Wholesale LLC ("Lehigh LLC") and Plaintiff is the Franchise Dealer.  (*Id.*, ¶¶ 19-20.)

Lehigh LLC is also the Rent Designee under the Unitary Lease Agreement.  (*Id.*, ¶ 21.)

The Unitary Lease Agreement references a number of entities as the Landlord including: LGP Realty Holdings LP, Erickson Oil Products, Inc., CAP Operations, Inc., Lehigh Gas Wholesale Services, Inc., and Lehigh LLC.  (*Id.*, ¶ 22.)

CAP required Plaintiff to pay to CAP a security deposit in the amount of $995,000 related to the two PMPA Franchise Agreements which amount CAP continues to hold in order to indemnify CAP from any monetary defaults by Plaintiff.  (*Id.*, ¶ 23.)

---

[3] Plaintiff has since sold 10 stations and "pushed back" 22 additional stations to CAP.

Paragraph 12.1(a) of the Fuel Supply Agreement provides: "Neither Distributor nor Franchise Dealer have a fiduciary relationship with the other[.]" (*Id.*, ¶ 24 and Ex. 1.)

Paragraph 12.1(b) of the Fuel Supply Agreement provides: "Franchise Dealer is an independent contractor with independent responsibility for and control over the manner and means of the day-to-day operations of the Businesses including Product deliveries, Product leak or release detection, Product leak or release reporting, and compliance with all Laws[.]" (*Id.*, ¶ 25 and Ex. 1.)

Paragraph 12.1(d) of the Fuel Supply Agreement provides, in pertinent part: "Franchise Dealer has exclusive control and direction over the duties, supervision, compensation, hiring and firing of its employees, contractors and agents." (*Id.*, ¶ 26 and Ex. 1.)

Paragraph 16.5 of the Unitary Lease Agreement provides, in pertinent part: "Nothing contained in this Lease shall be deemed or construed to confer upon Landlord any interest in the business of Tenant, and the relationship of the parties during the term of this Lease shall at all times be that of Landlord and Tenant and no other." (*Id.*, ¶ 27.)

Between November 1, 2022 and March 1, 2023, IYS entered into various Management and Operations Agreements (the "Management Agreements") pursuant to which the counterparties to the Management Agreements (the "Management Companies") undertook obligations to manage the Plaintiff's stations. (*Id.*, ¶ 28.)

The Management Companies include: (1) 7 Mart Inc. pursuant to a Management Agreement dated December 1, 2022; (2) Ameer Investment Inc. pursuant to two separate Management Agreements dated November 1, 2022; (3) Areej Investment Inc. pursuant to a Management Agreement dated November 1, 2022; (4) F&M Stop Market LLC pursuant to a Management Agreement dated December 1, 2022; (5) Kareem Inc. pursuant to two separate

5

Management Agreements both dated November 1, 2022; (6) Kenan Ventures LLC pursuant to a Management Agreement dated March 1, 2023; (7) Leanne Investment LLC pursuant to a Management Agreement dated November 1, 2022; (8) Leanne Ventures LLC pursuant to a Management Agreement dated November 1, 2022; and (9) M&A 200 Inc. pursuant to a Management Agreement dated December 1, 2022. (*Id.*, ¶ 29.)

7 Mart Inc., F&M Stop Market LLC and M&A 200 Inc. are not affiliated with IYS.  The other Management Companies are all owned by Munadel Rizek, the brother of Debtor's principal Muwafak Rizek.  (*Id.*, ¶ 30.)

Shortly after the Petition Date, the Defendants started for the first time to complain to the Plaintiff about purported problems with the franchise relationship.  (*Id.*, ¶ 31.)

During a mandatory earnings call on August 8, 2023, CAP's CEO, Charles Nifong, referenced CAP's conversion of certain lessee dealer sites to company-operated sites.  He stated: "These conversions are part of a strategy to convert certain lessee dealer locations with upside to company-operated sites."  (*Id.*, ¶ 32.)

On the same earnings call, Mr. Nifong stated: "We have the ability to convert sites … when the lessee dealer fails to perform in accordance with the terms of the contract."  (*Id.*, ¶ 33.)

Mr. Nifong confirmed that strategy during his deposition testimony on November 7, 2023.  (*Id.*, ¶ 34.)

Paragraph 12.1(b) of the Fuel Supply Agreement grants the Debtor "control over the manner and means of the day-to-day operations of the Businesses[.]" (*Id.*, ¶ 39 and Ex. 1.)

Paragraph 12.1(d) of the Fuel Supply Agreement grants the Debtor "exclusive control and direction over the duties, supervision, compensation, hiring and firing of its employees, contractors and agents."  (*Id.*, ¶ 40 and Ex. 1.)

6

Defendants have repeatedly threatened to terminate each of the Plaintiff's motor fuel franchises, including the filing of a motion in bankruptcy court seeking to force the Plaintiff to reject the Defendants' contracts, despite the absence of any default of performance by Plaintiff and that those agreements are the most significant asset in Plaintiff's estate. (*Id.*, ¶ 43.)

The Defendants have never issued any notice of termination of the PMPA Franchise Agreements to Plaintiff as required under the PMPA. (*Id.*, ¶¶ 44, 53.)

Defendants claim that the previously individual franchise relationships with Plaintiff are now subject to a "single transaction" of a "unitary nature."  (*Id.*, ¶ 57.)

The Security and Cross Default Agreement was presented after the execution of the other CAP Agreements.  It states that the PMPA Franchise Agreements were "previously entered into." (*Id.*, ¶ 59 and Ex. 3.)

The PMPA Franchise Agreements include approximately 15 service station locations within the State of Minnesota.  (*Id.*, ¶ 63.)

Plaintiff and Defendants had, and have, a community of interest in the marketing of motor fuels, which are offered pursuant to a tradename, trademark, service mark, logotype, advertising or other commercial symbol or related characteristic.  (*Id.*, ¶ 64.)

Motor fuels, including diesel fuel, are supplied to the Plaintiff by the Defendants. (*Id.*, ¶ 65.)

Defendants have not deposited any of the $995,000 security deposit in an interest-bearing account and the Defendants are not accruing interest for the benefit of the Plaintiff.  (*Id.*, ¶ 68.)

No notice of termination or cancellation has been provided pursuant to MN Stat § 80C.14(3).  (*Id.*, ¶ 69.)

Plaintiff and the Defendants had a community of interest in the business of offering and selling motor fuel under a tradename, trademark, service mark, logotype, advertising, or other commercial symbol.  (*Id.*, ¶ 76.)

On July 12, 2023, Defendants filed a motion to compel rejection of the PMPA Franchise Agreements or, alternatively, for relief from the stay ("Motion to Reject").  (Case No. 23 B 6782, EOD 74.)  On September 18, 2023, Plaintiff filed a motion to assume the PMPA Franchise Agreements ("Motion to Assume").  (*Id.*, EOD 206.)

Following a briefing schedule and a three-day evidentiary hearing, the court entered an opinion[4] and two orders on April 4, 2024.  The court denied the Motion to Reject and granted the Motion to Assume.  (*Id.*, EOD 553-555.)

### III.    LEGAL DISCUSSION

The Complaint contains four counts.  The Motion to Dismiss argues that the Complaint does not plausibly allege a claim for relief under any of the counts.[5]  The parties devote a great deal of argument in the papers to what Defendants can and cannot do. In resolving the Motion to Dismiss, however, the court will decide only whether the Complaint states a claim for relief, or not.

**A.  Count I – Petroleum Marketing Practices Act 15 U.S.C. § 2801 *et seq*.**

In Count I, Plaintiff seeks relief under 15 U.S.C. § 2805:

**(a) Maintenance of civil action by franchisee against franchisor; jurisdiction and venue; time for commencement of action**

---

[4] *In re IYS Ventures, LLC*, 659 B.R. 308 (Bankr. N.D. Ill. 2024) ("Assumption/Rejection Opinion").

[5] In the Response, Plaintiff professes confusion at the rule of procedure under which the Motion to Dismiss is brought.  In their preliminary statement, however, Defendants request dismissal "for failure to state any claims upon which relief may be granted."  In paragraph 4 of the Motion to Dismiss, Defendants cite *Twombly* and *Iqbal*.  They conclude paragraph 4 by arguing that "all four counts in the Complaint fail to state a plausible claim."  The court will evaluate the Motion to Dismiss under Fed. R. Civ. P. 12(b)(6).

If a franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title, the franchisee may maintain a civil action against such franchisor. Such action may be brought, without regard to the amount in controversy, in the district court of the United States in any judicial district in which the principal place of business of such franchisor is located or in which such franchisee is doing business, except that no such action may be maintained unless commenced within 1 year after the later of--

(1) the date of termination of the franchise or nonrenewal of the franchise relationship; or

(2) the date the franchisor fails to comply with the requirements of section 2802, 2803, or 2807 of this title.

**(b) Equitable relief by court; bond requirements; grounds for nonexercise of court's equitable powers**

(1) In any action under subsection (a), the court shall grant such equitable relief as the court determines is necessary to remedy the effects of any failure to comply with the requirements of section 2802, 2803, or 2807 of this title, including declaratory judgment, mandatory or prohibitive injunctive relief, and interim equitable relief.

(2) Except as provided in paragraph (3), in any action under subsection (a), the court shall grant a preliminary injunction if--

(A) the franchisee shows--

(i) the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed, and

(ii) there exist sufficiently serious questions going to the merits to make such questions a fair ground for litigation; and

(B) the court determines that, on balance, the hardships imposed upon the franchisor by the issuance of such preliminary injunctive relief will be less than the hardship which would be imposed upon such franchisee if such preliminary injunctive relief were not granted.

(3) Nothing in this subsection prevents any court from requiring the franchisee in any action under subsection (a) to post a bond, in an amount established by the court, prior to the issuance or continuation of any equitable relief.

(4) In any action under subsection (a), the court need not exercise its equity powers to compel continuation or renewal of the franchise relationship if such action was commenced--

9

(A) more than 90 days after the date on which notification pursuant to section 2804(a) of this title was posted or personally delivered to the franchisee;

(B) more than 180 days after the date on which notification pursuant to section 2804(b)(2) of this title was posted or personally delivered to the franchisee; or

(C) more than 30 days after the date on which the termination of such franchise or the nonrenewal of such franchise relationship takes effect if less than 90 days notification was provided pursuant to section 2804(b)(1) of this title.

**(c) Burden of proof; burden of going forward with evidence**

In any action under subsection (a), the franchisee shall have the burden of proving the termination of the franchise or the nonrenewal of the franchise relationship. The franchisor shall bear the burden of going forward with evidence to establish as an affirmative defense that such termination or nonrenewal was permitted under section 2802(b) or 2803 of this title, and, if applicable, that such franchisor complied with the requirements of section 2802(d) of this title.

**(d) Actual and exemplary damages and attorney and expert witness fees to franchisee; determination by court of right to exemplary damages and amount; attorney and expert witness fees to franchisor for frivolous actions**

(1) If the franchisee prevails in any action under subsection (a), such franchisee shall be entitled--

(A) consistent with the Federal Rules of Civil Procedure, to actual damages;

(B) in the case of any such action which is based upon conduct of the franchisor which was in willful disregard of the requirements of section 2802, 2803, or 2807 of this title, or the rights of the franchisee thereunder, to exemplary damages, where appropriate; and

(C) to reasonable attorney and expert witness fees to be paid by the franchisor, unless the court determines that only nominal damages are to be awarded to such franchisee, in which case the court, in its discretion, need not direct that such fees be paid by the franchisor.

(2) The question of whether to award exemplary damages and the amount of any such award shall be determined by the court and not by a jury.

(3) In any action under subsection (a), the court may, in its discretion, direct that reasonable attorney and expert witness fees be paid by the franchisee if the court finds that such action is frivolous.

**(e) Discretionary power of court to compel continuation or renewal of franchise relationship; grounds for noncompulsion; right of franchisee to actual damages and attorney and expert witness fees unaffected**

(1) In any action under subsection (a) with respect to a failure of a franchisor to renew a franchise relationship in compliance with the requirements of section 2802 of this title, the court may not compel a continuation or renewal of the franchise relationship if the franchisor demonstrates to the satisfaction of the court that--

> (A) the basis for such nonrenewal is a determination made by the franchisor in good faith and in the normal course of business--

>> (i) to convert the leased marketing premises to a use other than the sale or distribution of motor fuel,

>> (ii) to materially alter, add to, or replace such premises,

>> (iii) to sell such premises,

>> (iv) to withdraw from the marketing of motor fuel through retail outlets in the relevant geographic market area in which the marketing premises are located, or

>> (v) that renewal of the franchise relationship is likely to be uneconomical to the franchisor despite any reasonable changes or reasonable additions to the provisions of the franchise which may be acceptable to the franchisee; and

> (B) the requirements of section 2804 of this title have been complied with.

(2) The provisions of paragraph (1) shall not affect any right of any franchisee to recover actual damages and reasonable attorney and expert witness fees under subsection (d) if such nonrenewal is prohibited by section 2802 of this title.

**(f) Release or waiver of rights**

(1) No franchisor shall require, as a condition of entering into or renewing the franchise relationship, a franchisee to release or waive--

> (A) any right that the franchisee has under this subchapter or other Federal law; or

> (B) any right that the franchisee may have under any valid and applicable State law.

(2) No provision of any franchise shall be valid or enforceable if the provision specifies that the interpretation or enforcement of the franchise shall be governed

by the law of any State other than the State in which the franchisee has the principal place of business of the franchisee.

15 U.S.C. § 2805.

Plaintiff concludes Count I by stating in paragraph 61 that it seeks "declaratory relief confirming that the Plaintiff cannot be terminated or nonrenewed under the PMPA; and judicial determinations declaring the rights of the parties pursuant to applicable law."  The second half of paragraph 61 is too vague to satisfy the requirement of Fed. R. Civ. P. 8 that it provide notice to Defendants of a claim for relief.

In the "Wherefore" clauses at the conclusion of the entire Complaint, however, Plaintiff explains the "judicial determinations" that it seeks.  In addition to requesting (1) a declaration that Plaintiff cannot be terminated or nonrenewed under the PMPA, Plaintiff seeks a declaration that (2) the Security and Cross Default Agreement is void and (3) management of its franchises under the Management Agreements is permitted.  It also prays that the court enter an injunction barring Defendants from terminating or non-renewing the Plaintiff's franchises and from dispossessing or attempting to dispossess the Plaintiff from any of the Plaintiff's stations subject to the PMPA Franchise Agreements without further order of court.

The court will address each of these requests in turn to determine whether Count I plausibly alleges a claim for relief.

**1. Declaration regarding whether Plaintiff can be terminated or nonrenewed under the PMPA**

The basis for Plaintiff's claim for relief that it cannot be terminated or nonrenewed under the PMPA is that Defendants' actions and failure to provide proper notice of termination now bar them from pursuing termination or nonrenewal at all.

At oral argument, counsel for Plaintiff asserted that Defendants have attempted to repossess Plaintiff's service stations, to end Plaintiff's ability to purchase gasoline, and to stop

12

supplying product to Plaintiff.  Despite these assertions made during oral argument, the *Complaint* does not contain allegations that allow the court to draw the reasonable inference that Defendants engaged in conduct that constitutes termination.

In paragraph 43 of the Complaint, Plaintiff alleges that Defendants "have repeatedly threatened to terminate each of the Plaintiff's motor fuel franchises, including the filing [of] a motion in bankruptcy seeking to force the Plaintiff to reject the Defendant Franchisors' contracts[.]"

Threats to terminate, however, are not the same as termination.  There are no allegations in the Complaint that Defendants took actions that met any of the requirements in *Mac's Shell*, actions that forced an end to the franchisee's use of the franchisor's trademark, purchase of the franchisor's fuel, or occupation of the franchisor's service station.  "Conduct that does not force an end to the franchise … is not prohibited by the Act's plain terms."  *Mac's Shell Serv., Inc. v. Shell Oil Prod. Co. LLC*, 559 U.S. 175, 183 (2010).

As explained more fully at oral argument, the gist of Plaintiff's claims for relief is that Defendants' filing of the Motion to Reject is equivalent to a termination under the PMPA. Although Plaintiff's Response contains extensive legal citations, it did not direct the court to any case holding that a franchisor's request that a court compel a debtor-dealer to reject franchise agreements constitutes termination of those agreements under the PMPA.  The court has been unable to find such a decision in its own research.  Indeed, a search for published opinions that contain both a reference to a pending motion to compel rejection and a citation to the PMPA produced only one result: the Assumption/Rejection Opinion.

Moreover, bankruptcy law is clear that rejection of an executory contract is not the same as termination.  "A rejection converts a debtor's unfulfilled obligations to a pre-petition damages

13

claim.  But it does not terminate the contract[.]"  *Mission Prod. Holdings, Inc. v. Tempnology, LLC*, 587 U.S. 370, 375 (2019) (summarizing Bankruptcy Appellate Panel ruling with which the Court agreed) (quotations omitted).

Under the PMPA, termination or nonrenewal means exactly that: achieving termination or nonrenewal.  "[A] necessary element of any constructive termination claim under the Act is that the franchisor's conduct forced an end to the franchisee's use of the franchisor's trademark, purchase of the franchisor's fuel, or occupation of the franchisor's service station."  *Mac's Shell*, 559 U.S. at 182 (footnote omitted).

As the Supreme Court explained, "termination" of a contract under the PMPA is to be given its ordinary meaning.  *Id.*  Similarly, "[t]he plain text of the statute leaves no room for a franchisee to claim that a franchisor has unlawfully declined to renew a franchise relationship – constructively or otherwise – when the franchisee has in fact accepted a new franchise agreement."  *Id.*, 559 U.S. at 191.  There are no allegations in the Complaint that would support a finding that Defendants terminated or failed to renew the PMPA Franchise Agreements.  Indeed, Defendants did not even accomplish rejection, but merely *requested* it, and eventually the court denied that request.  Instead, the court granted the Plaintiff's Motion to Assume without modification.  *See generally* Assumption/Rejection Opinion.  Because the Complaint relies on Defendants' Motion to Reject and actions preceding Plaintiff's assumption of the PMPA Franchise Agreements to support a claim for relief based on termination or nonrenewal under the PMPA, it has failed to state a claim.

Since the Complaint fails to plausibly allege that Defendants terminated or failed to renew the franchise relationship, it is immaterial whether Defendants provided proper notice of termination.  There is no basis for Plaintiff's claim for relief that the court enter a declaratory

14

judgment that Plaintiff cannot be terminated or nonrenewed under the PMPA.  To the extent the

Complaint seeks such relief, the Motion to Dismiss is granted with leave to amend.

### 2.  Declaration regarding whether the Security and Cross Default Agreement is void

The Complaint describes the Security and Cross Default Agreement in three paragraphs:

> Sometime later, the Defendants presented the Plaintiff with a "Security and Cross Default Agreement" with an effective date of April 1, 2021.  (Exhibit 3)….

> Further, the Security and Cross Default Agreement was presented well after the exercise of the PMPA Franchise Agreements; and references the fact that those agreements were "previously entered into."

> The Security and Cross Default Agreement constitutes a further waiver of the Plaintiff's rights and is otherwise void and unenforceable on its face.

Complaint, ¶¶ 18, 59 and 60.  Plaintiff seeks a declaratory judgment that because the Security

and Cross Default Agreement allegedly constitutes a waiver of its rights, and because 15 U.S.C.

§ 2805(f)(1) provides that franchisors may not "require, as a condition of entering into or

renewing the franchise relationship, a franchisee to release or waive -- (A) any right that the

franchisee has under this subchapter or other Federal law; or (B) any right that the franchisee

may have under any valid and applicable State law[,]" that agreement is void.

This court is bound by Seventh Circuit precedent, however, and the Seventh Circuit has

held "that a franchisee may only maintain a civil action under the PMPA for violations of §

2805(f)(1) if those violations constitute a nonrenewal of its franchise relationship under § 2802

or 2803." *Dersch Energies, Inc. v. Shell Oil Co.*, 314 F.3d 846, 857–58 (7th Cir. 2002) (footnote

omitted).  There is no separate cause of action under § 2805(f)(1). *See id.*, 314 F.3d at 857. *See

also Bruce v. Motiva Enterprises LLC*, No. 3:00CV1831 (AVC), 2006 WL 8447932, at *3 (D.

Conn. Mar. 30, 2006) (emphasis added) (While "[s]ection 2805(f)(1) of the PMPA prohibits

franchisors from requiring a franchisee to release or waive state or federal rights as a condition of

entering into or renewing the franchise relationship … *[it] does not furnish a cause of action*

*separate and apart from an action based upon actual termination or non-renewal*.") (footnote omitted).

As discussed in the section above, the Complaint fails to plausibly allege that Defendants terminated or failed to renew the franchise relationship.  Therefore, Plaintiff cannot maintain a claim for relief for a violation of § 2805(f).  To the extent the Complaint seeks a declaratory judgment that the Security and Cross Default Agreement should be declared void, the Motion to Dismiss is granted with leave to amend.

3. **The question of whether Plaintiff may manage its franchises under the Management Agreements has been resolved**

In the Assumption/Rejection Opinion, the court held "that the Management Company Agreements do not constitute an impermissible assignment, and therefore Debtor has not defaulted under the CAP Agreements."  659 B.R. at 327.  Consequently, to the extent that the Complaint seeks a declaration that Plaintiff's management of the franchise relationship pursuant to the Management Agreements is permitted, this claim for relief has been resolved by the Assumption/Rejection Opinion.  "The doctrine of law of the case establishes a presumption that a ruling made at one stage of a lawsuit will be adhered to throughout the suit."  *Cannon v. Armstrong Containers Inc.*, 92 F.4th 688, 701 (7th Cir. 2024) (quotation omitted).  Any amended complaint should not contain this claim for relief, as it would be redundant of the claim resolved by this court in the Assumption/Rejection Opinion.

4. **Plaintiff failed to state a claim for injunctive relief**

In the final piece of Count I, Plaintiff asks that the court enter an injunction barring Defendants from terminating or non-renewing the Plaintiff's franchises and from dispossessing or attempting to dispossess the Plaintiff from any of the Plaintiff's stations subject to the PMPA Franchise Agreements without further order of court.

16

"The franchisee's burden of proof for receiving a preliminary injunction under the PMPA is not a heavy one. In contrast to rule 65 of the Federal Rules of Civil Procedure, which requires a movant to show a strong or reasonable likelihood of success, the PMPA requires only that a franchisee show a reasonable chance of success on the merits." *Moody v. Amoco Oil Co.,* 734 F.2d 1200, 1216 (7th Cir. 1984). In order for the court to grant injunctive relief under the PMPA, however, the franchisee must show, among other requirements, that "the franchise of which he is a party has been terminated or the franchise relationship of which he is a party has not been renewed[.]" 15 U.S.C. § 2805(b)(2). At this stage of the proceedings, that means that Plaintiff must have plausibly alleged in the Complaint that the franchise has been terminated or non-renewed.

As discussed above, under the ordinary meaning of termination, the Complaint contains no well-pleaded allegations that the franchise has been terminated or the franchise relationship has not been renewed. Therefore, to the extent that the Complaint seeks injunctive relief, Plaintiff failed to plausibly allege a claim for relief. The Motion to Dismiss is granted with leave to amend.

For all of the reasons stated above, the Motion to Dismiss is granted as to Count I. Plaintiff will be allowed an opportunity to file an amended complaint with a revised Count I that comports with the discussion in this Section III(A).

### B. Count II – Minnesota Franchise Law

In Count II, Plaintiff alleges that certain of the service stations in the franchise relationship with Defendants are located in Minnesota. Therefore, Minnesota law applies to those stations. It seeks declaratory relief that the franchise relationship cannot be terminated or nonrenewed under Minnesota law because no "good cause" exists and no notice was provided. It

also seeks an injunction compelling Defendants to maintain the $995,000 security deposit in an interest-bearing account accruing at least 6% interest annually, and payable upon termination of the security deposit.

Chapter 80F governs motor vehicle fuel franchises under Minnesota law. Security deposits are covered by § 80F.12:

> A security deposit shall not be required except for the purpose of securing against loss of or damage to real or personal property or payment of money due to the supplier or credit extended to the dealer. Any security deposit required of the dealer may be satisfied by a letter of credit or the deposit of cash or a pledge of a savings account or its equivalent in a banking institution located in Minnesota. In the event that the security deposit is made by the dealer by depositing cash with the supplier, the deposit shall earn interest at the rate of six percent per year which shall accrue to the benefit of the dealer and be payable to the dealer upon termination of the security deposit, less any charges to which the supplier is entitled to collect from the security deposit or interest earned on it. In the event that the security deposit is made by the pledge of a savings account, a savings account shall be opened in the joint name of the supplier and the dealer and neither party shall be entitled to withdraw the funds without the consent of the other party; upon termination of the security deposit arrangement, the principal deposit together with accrued interest at the rate paid for the account shall be payable to the dealer after deduction of any charges to which the supplier may be entitled.

M.S.A. § 80F.12.

It is obvious from reading § 80F.12 that Plaintiff cannot maintain a claim for relief for which the remedy is an injunction requiring that the security deposit be held in a separate, interest-bearing account. Therefore, to the extent that paragraph 72 of the Complaint seeks injunctive relief compelling Defendants to maintain the security deposit in an interest-bearing account, the Motion to Dismiss is granted with leave to amend.

Plaintiff also alleges in Paragraph 70 of Count II that no good cause exists for termination or cancellation of the Minnesota franchise relationships and no notice was provided pursuant to Minnesota Rules, part 2860.4400. Therefore, Plaintiff seeks declaratory relief that it cannot be

18

terminated or nonrenewed under Minnesota law, and also seeks judicial determinations declaring the rights of the parties.

To the extent that the Motion to Dismiss seeks dismissal of Count II on the grounds that the Motion to Reject did not constitute an act to terminate or not renew the PMPA Franchise Agreements, it will be granted for the reasons explained more fully in the discussion at Section III(A). Plaintiff is granted leave to amend the Complaint accordingly.

## C. Count III – Wisconsin Franchise Law

In Count III, Plaintiff alleges that one franchise location operating in Wisconsin is protected by the Wisconsin Fair Dealership Law, W.S.A. § 135.01 *et seq*. Plaintiff alleges in Paragraph 77 of Count III that no good cause exists for termination, cancellation or substantial change in competitive circumstances pursuant to W.S.A. § 135.03 and no notice was provided under W.S.A. § 135.04. Therefore, Plaintiff seeks declaratory relief that it cannot be terminated or nonrenewed under Wisconsin law and judicial determinations declaring the rights of the parties.

To the extent that the Motion to Dismiss seeks dismissal of Count III on the grounds that the Motion to Reject did not constitute an act to terminate or not renew the PMPA Franchise Agreements, it will be granted for the reasons explained more fully in the discussion at Section III(A). Plaintiff is granted leave to amend the Complaint accordingly.

## D. Count IV – Breach of Contract

In Count IV, Plaintiff realleges all earlier paragraphs of the Complaint. Count IV then contains two unique allegations:

Each of the PMPA Franchise Agreements incorporate the substantive provisions of the PMPA including an alleged "failure to comply with any provision of the agreement, which provision is both reasonable and of material significance to the franchise relationship" as well as the "occurrence of an event which is relevant to

19

the franchise relationship and as a result of which the termination of the agreement and the franchise relationship is reasonable" both of which are nearly verbatim quotations from the PMPA and terms of art in the industry.

As such, the PMPA Franchise Agreements are virtually coextensive with the PMPA. Complaint, ¶¶ 80-81. Based on those allegations, Plaintiff requests declaratory relief that it cannot be terminated or nonrenewed under the PMPA Franchise Agreements, and judicial determinations declaring the rights of the parties pursuant to applicable law.

Count IV is described as a claim for breach of contract. Plaintiff has not identified any provision of the PMPA Franchise Agreements that Defendants breached. Simply alleging that the PMPA Franchise Agreements "are virtually coextensive with the PMPA" is insufficient to put Defendants on notice of a claim for breach of contract.[6]

Therefore, the Motion to Dismiss will be granted as to Count IV, with leave to amend.

## IV. CONCLUSION

For all of the reasons stated above, the court will enter an order granting the Motion to Dismiss, with leave to amend the Complaint.[7] In that order, the court will set a status hearing on this adversary proceeding. At that status hearing, the court may set a deadline for Plaintiff to file an amended complaint that comports with this Memorandum Opinion.

Date: September 26, 2024

                                           _____
                                           DAVID D. CLEARY
                                           United States Bankruptcy Judge

---

[6] Some courts have held that § 2806 of the PMPA preempts breach of contract claims. *See Seckler v. Star Enter.*, 124 F.3d 1399, 1404 (11th Cir. 1997), *as clarified* (Dec. 4, 1997) (quotation and citations omitted) ("The Fourth and Eighth Circuits have adopted an expansive view of PMPA preemption, holding that the PMPA preempts any state law that affects the termination of franchises or nonrenewal of franchise relationships. The First, Second, Third, Sixth and Ninth Circuits have instead adopted a restrictive preemption view[.]"). The Seventh Circuit elided the issue in 2009. *See Rao v. BP Prod. N. Am., Inc.*, 589 F.3d 389, 398 (7th Cir. 2009).

[7] "Under Rule 15(a), fee-paying plaintiffs enjoy leave to amend whenever 'justice so requires' and, as a matter of course, almost always get an opportunity to amend their complaints at least once." *Luevano v. Wal-Mart Stores, Inc.*, 722 F.3d 1014, 1024 (7th Cir. 2013).